654 A.2d 566

COMMONWEALTH of Pennsylvania

v.

Richard McCLEERY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 25, 1994.

Filed Feb. 1, 1995.

---

380

Ellen M. Viakley, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from judgment of sentence entered on August 4, 1993. Appellant, Richard McCleery, raises the following issues for our review:

1. Whether the lower court erred in permitting expert witnesses to testify over defense objection that the witness' conduct was consistent with rape trauma syndrome[?]

2. Whether it was error to permit the prosecution to augment the credibility of the complaining witness with prior statements[?]

3. Whether the defendant was denied the effective assistance of counsel at trial, under both federal and state constitutional standards, by counsel's failure, inter alia, to introduce critical evidence regarding the competence and credibility of the complaining witness[?]

4. Whether defendant was denied due process of law, under both federal and state constitutional standards, by the trial court's refusal to permit counsel to present evidence in support of the post-trial motions; to mark exhibits for the record for purposes of appeal; and to order the enforcement of duly issued subpoenas[?]

5. Whether the lower court erred in ruling inadmissible evidence of allegations of sexual misconduct reported by the complainant and investigated in 1985, which attributed substantially similar misconduct to another person[?]

Appellant's Brief at 2. For the reasons that follow, we reverse.

The facts of this case may be summarized as follows. In September of 1982, T.M. and D.M. were removed from the custody of their mother with the assistance of Children Youth Services (hereinafter "CYS").[1] The children were then placed in the temporary custody of Joy and Richard McCleery as foster children. At that time, T.M. and D.M. were respectively two and one half and one years old. The girls remained in the custody of the McCleery's until July of 1985, at which time B.S., another foster child living with the McCleery's, reported to CYS that T.O.M., the McCleery's natural son, had been engaging in sexual conduct with both T.M. and D.M. All three children were removed from the household and T.O.M. later admitted to having sexual conduct with both girls.

Five years later, in May of 1990, while the victim attended a counseling session with a psychiatric social worker, she revealed that she had been raped by her foster father numerous times beginning at the age of two years old.[2] As a result on May 9, 1991, appellant was charged with one count of rape,[3] one count of statutory rape,[4] one count of involuntary deviate sexual intercourse,[5] two counts of indecent assault[6] and one count of corruption of minors.[7]

At trial, the Commonwealth presented expert testimony concerning the usual delay in reporting by child sexual abuse victims. In addition, they presented testimony regarding the presence and absence of physical trauma in child sexual abuse cases and the typical time for resolution of such physical trauma. Following a trial by jury, on September 17, 1992, appellant was found guilty of all charges and subsequently

1. The children were removed from the custody of their natural mother because of the mother's history of substance abuse, violence and psychiatric instability.

2. We note that the victim was later diagnosed as suffering from psychotic episodes, hallucinations and a possible bipolar disorder.

3. 18 Pa.C.S. § 3121.

4. 18 Pa.C.S. § 3122.

5. 18 Pa.C.S. § 3123.

6. 18 Pa.C.S. § 3126.

7. 18 Pa.C.S. § 6301.

sentenced to an aggregate period of incarceration of not less than ten (10) nor more than twenty (20) years imprisonment. Post-trial motions were filed and denied. This timely appeal followed.

■ Appellant first argues that the lower court erred in permitting expert witnesses to testify that the victims' conduct was consistent with rape trauma syndrome. Specifically, he contends that both the admission of expert testimony regarding the delay in reporting by child sexual abuse victims and the admission of expert testimony concerning the significance of physical evidence of trauma in child victims of sexual abuse constitutes reversible error. After careful analysis of case law in this area, we are constrained to agree.

Recently, in *Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830 (1992), the Supreme Court specifically held that it was reversible error to permit the prosecution to introduce expert testimony regarding delay in reporting by child sexual abuse victims. The Court explained that such testimony comprises an impermissible attempt by the Commonwealth to bolster the credibility of the complaining witness. *Dunkle* at 184,. 602 A.2d at 837. *See also Commonwealth v. Garcia,* 403 Pa.Super. 280, 588 A.2d 951 (1991), *appeal denied,* 529 Pa. 656, 604 A.2d 248 (1992) (determinations of credibility are reserved exclusively for the jury).

*Dunkle,* however, is only one case in a long line of decisions regarding the inadmissibility of expert testimony on issues related to the credibility of sexual complainants. *See e.g., Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988) (court found reversible error where expert witness testified that rape complainant's failure to identify her attacker was unremarkable); *Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315, 317 (1988) (reversible error to permit an expert to testify that children generally lack the ability to fabricate sexual experiences); *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920, 922 (1986) (rape conviction reversed where expert stated an opinion regarding the veracity of child sexual abuse complainants); *Commonwealth v. Emge,* 381 Pa.Super. 139, 553

A.2d 74 (1988) (conviction reversed where expert testified that victim's post-attack behavior was consistent with behavior of victims of child sexual abuse). With these cases in mind, we will proceed with appellant's claim.

In the present case, Commonwealth witness, Mary Carrasco, an expert in the area of pediatrics and child abuse, was permitted to testify that the witness' delay in reporting was consistent with sexual abuse and that "most" child victims of sexual abuse delay in reporting the abuse. The expert was further permitted to testify to a reasonable degree of medical certainty, that the absence of any physical evidence of trauma was consistent with the complainant's allegations of sexual abuse.[8]

The expert testimony challenged here is precisely that which this court en banc previously found to comprise reversible error. *Commonwealth v. Garcia*, 403 Pa.Super. 280, 588 A.2d 951 (1991) (en banc). In *Garcia*, the Commonwealth called an expert witness who was a pediatrician and co-director of a pediatric sexual assault program. Over defense objection, the witness was permitted to testify that it was not unusual for child abuse victims to delay in reporting abuse. *Garcia* at 283–284, 588 A.2d at 952. Our Court reversed the conviction, holding that such testimony was an impermissible attempt by the Commonwealth to bolster the credibility of the victim. We also note, that the expert in *Garcia*, similar to the instant case, testified regarding the "presence and absence of physical trauma in child sexual abuse cases and the usual time frame for resolution of such trauma." *Id.* at 284, n. 3, 588 A.2d at 952, n. 3. The court held that expert testimony regarding the significance of the presence or absence of physical trauma in child sexual abuse cases was inadmissible, because the "prejudicial impact of this testimony clearly outweighs in probative value." *Id.*

The Commonwealth argues that Ms. Carrasco's statement concerning the presence and absence of physical findings

8. In addition, Commonwealth witness, Norma Bussey, a CYS caseworker for twelve years, also testified that it was common for child sexual abuse victims to delay in reporting.

in child sexual abuse cases was in response to defense counsel's suggestion during his opening that the Commonwealth must present physical corroboration in order to sustain its burden of proof. After carefully reviewing the opening remarks of defense counsel, we draw no such inference. In his opening statement, defense counsel merely informed the jury that since there was no physical evidence in this case, the question would essentially come down to one of credibility.

The Commonwealth further argues that Ms. Carrasco's statement that "most children disclose sexual abuse after a long period of time," is admissible because defense counsel opened the door. Again, we disagree. On direct examination, the Commonwealth themselves elicited much testimony on the absence of physical trauma in sexual abuse cases, inferring that physical trauma does not exist due to a delay in reporting. Therefore, as it was the Commonwealth who initially offered this testimony, this argument is equally without merit.

Thus, in light of *Garcia, Dunkle,* and the long line of cases preceding them, we find that the testimony in the instant case should not have been admitted. Such testimony was an impermissible attempt by the Commonwealth to bolster the credibility of the victim. As such, it invaded the province of the jury by encouraging them to abdicate their responsibility to ascertain the facts. *See Garcia* at 289, 588 A.2d at 955 (expert testimony presents unique dangers to a defendant's right to a fair trial in that jurors may be, "unduly impressed by an expert, his credentials, and ultimately his opinion").

Accordingly, for the reasons stated above, we reverse and remand for a new trial.[9]

Reversed and remanded for a new trial.

---

9. Due to the disposition of this issue, we need not address the remaining issues.