690 A.2d 274

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Glenn A. JOHNSON.**

Superior Court of Pennsylvania.

Argued Nov. 26, 1996.

Filed Feb. 17, 1997.

Stuart B. Suss, Assistant District Attorney, West Chester, for Commonwealth, appellant.

William P. Scott, West Chester, for appellee.

Before CAVANAUGH, CIRILLO, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, SAYLOR, EAKIN and SCHILLER, JJ.

JOHNSON, Judge:

In this appeal, we are asked to determine whether a trial court may exclude expert medical testimony that the absence of evidence of physical trauma is consistent with incidents of sexual abuse. We hold that this testimony is admissible. Accordingly, we reverse and remand for further proceedings consistent with this Opinion.

On January 23, 1995, the Commonwealth charged Glenn A. Johnson with two counts each of involuntary deviate sexual intercourse (IDSI), attempted IDSI, aggravated indecent assault, indecent exposure and corruption of minors. The Commonwealth based these charges upon allegations that Johnson had sexually abused F.A., a six-year-old boy.

During discovery, Johnson learned that the Commonwealth planned to introduce the testimony of expert medical witness Dr. Allan R. DeJong. DeJong is a pediatrician who examined F.A. approximately two years after the last assault allegedly occurred. DeJong planned to testify that

"[t]he absence of specific or diagnostic injuries or scars is common and does not exclude the possibility of penile anal penetration or other forms of sexual contact. Many injuries are mild and superficial, such as swelling, bruising, erythema and superficial lacerations or abrasions which heal rapidly without scarring."

Order of Court n. 1, September 8, 1995, quoting DeJong's letter to the Assistant District Attorney, dated August 2, 1995. DeJong also planned to explain that it was not unusual for F.A. not to have scars, despite his reported pain and bleeding. *Id.*

Johnson filed a pre-trial motion in limine to exclude the portions of DeJong's testimony relating to the absence of evidence of physical trauma. In his motion, Johnson argued that: (1) the proposed testimony would improperly bolster F.A.'s credibility; and (2) testimony regarding the significance of the presence or absence of evidence of physical trauma is inadmissible in child sexual abuse cases. On September 8, 1995, the trial court granted Johnson's motion, stating that the proffered testimony would be excluded during the Commonwealth's "case in chief because it touches upon the significance of the non-findings and tends to bolster the credibility of the victim." *Id.*

The Commonwealth appealed, certifying that the grant of the motion in limine handicapped its prosecution. *Commonwealth v. Dugger,* 506 Pa. 537, 546–47, 486 A.2d 382, 386

(1985). A panel of this Court affirmed. The Commonwealth then petitioned the full determine whether the Commonwealth can introduce expert medical testimony that the absence of evidence of physical trauma is consistent with allegations of sexual assault.

 Pennsylvania courts permit expert testimony "as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman." *Commonwealth v. O'Searo*, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976). Conversely, expert testimony is not permitted on matters of common knowledge. *Commonwealth v. Hernandez*, 420 Pa.Super. 1, 13, 615 A.2d 1337, 1343 (1992). Expert testimony may not be used to bolster the credibility of witnesses because witness credibility is solely within the province of the jury. *See Commonwealth v. Davis*, 518 Pa. 77, 82, 541 A.2d 315, 317 (1988).

In determining the admissibility of expert testimony on matters related to sexual assaults, our courts have distinguished between testimony regarding physical facts and testimony regarding the behavior of victims. Generally, the conduct or behavior of victims has been held not to be a proper subject for expert testimony because such testimony tends to encroach upon the jury's function of evaluating witness credibility. *See, e.g., Commonwealth v. Emge*, 381 Pa.Super. 139, 144, 553 A.2d 74, 76 (1988). Testimony regarding physical facts, however, has been held to be admissible. *Hernandez, supra.*

For example, in *Hernandez*, a panel of this Court held that "a pediatrician . . ., qualified as a medical expert, may testify that the physical facts observed and reported by the treating physician were consistent with the allegation of anal sodomy." *Id.* at 14, 615 A.2d at 1343. In making this determination, we did not expressly state whether the pediatrician testified regarding the absence of evidence of physical trauma or the presence of such evidence. We also concluded that this testimony concerned a matter that was not within the common knowledge of an average juror. *Id.* Further, because the

witness was informing the jury about objective and verifiable physical facts, we concluded that his testimony did not impermissibly withdraw "the issue of witness credibility from the jury." *Id.* In other words, because the witness was testifying about the physical condition of the victim, the purpose of his testimony was not simply to bolster the credibility of the victim. Likewise, in *Commonwealth v. Seigrist*, 253 Pa.Super. 411, 421 n. 7, 385 A.2d 405, 410 n. 7 (1978), we concluded that an expert medical witness could testify that the physical condition of an alleged rape victim was consistent with her rape allegations.

On the other hand, our courts have generally excluded expert testimony that discusses behavior patterns that are common to victims of sexual assault. Such testimony encroaches upon the jury's function of evaluating witness credibility. *See, e.g., Commonwealth v. Seese*, 512 Pa. 439, 443, 517 A.2d 920, 922 (1986); *Commonwealth v. Garcia*, 403 Pa.Super. 280, 288, 588 A.2d 951, 955 (1991) (en banc); *Emge, supra,* at 144, 553 A.2d at 76 ("testimony which matches up the behavior of known victims of child sexual abuse with that of an alleged victim can serve no purpose other than to bolster the credibility of the alleged victim, and this purpose is patently prohibited.").

In *Seese,* for example, an expert witness testified that "[i]t is very unusual that a child would lie about sexual abuse." *Seese, supra,* at 441, 517 A.2d at 921. This testimony bolstered the credibility of the alleged victim by stating that the class to which she belonged, children, generally told the truth about sexual abuse. *Id.* at 442, 517 A.2d at 922. Thus, the supreme court held that this testimony was impermissible because the expert—by rendering an opinion on witness credibility—had intruded upon a function reserved solely for the jury.

Similarly, in *Garcia,* an expert medical witness testified that up to one-third of child sexual assault victims take several years to report their attacks. *Garcia, supra,* at 284, 588 A.2d at 952. The expert also explained why, in his opinion, these victims take so long to report such assaults. This Court,

sitting en banc, concluded that the testimony was not permissible because it bolstered the credibility of the alleged victims by indicating that their behavior was normal for child sexual abuse victims. *Id.* at 288, 588 A.2d at 955.

In this case, the Commonwealth proposes that Dr. DeJong testify that the "absence of diagnostic injuries or scars is common and does not exclude the possibility of penile anal penetration or other forms of sexual contact." Trial Court Order n. 1, September 8, 1995. His proposed testimony, in other words, is that a child who is anally sodomized might not suffer physical injury or scarring from the assault.

We conclude that this subject is appropriate for expert testimony because the physical condition of a sexual assault victim is not a matter that is typically within the knowledge of average jurors. *See Hernandez, supra,* at 14, 615 A.2d at 1343. Further, because this testimony pertains to objective medical facts—rather than speculative explanations for patterns of behavior—this testimony does not encroach upon the jury's role in evaluating witness credibility. *Id.; see also Commonwealth v. Dunkle,* 529 Pa. 168, 180, 602 A.2d 830, 836 (1992) (distinguishing between expert testimony regarding physical findings and expert testimony regarding behavior). Accordingly, we hold that the proposed testimony is admissible.

The trial court relied on *Commonwealth v. McCleery,* 439 Pa.Super. 378, 654 A.2d 566 (1995) and *Commonwealth v. Garcia, supra,* in holding that DeJong's testimony was inadmissible. There is dicta in both cases that can be read to support the trial court's conclusion. *McCleery, supra,* at 383–84, 654 A.2d at 569; *Garcia, supra,* at 284 n. 3, 588 A.2d at 952 n. 3. To the extent that *McCleery* and *Garcia* can be read as stating that expert testimony regarding the absence or presence of evidence of physical trauma on sexual assault victims is inadmissible, those cases are overruled.

Finally, Johnson argues in his brief to this Court that DeJong's testimony is irrelevant and thus inadmissible. Johnson, however, did not raise the relevance issue before the trial

court in his motion in limine. We cannot, therefore, consider this issue on appeal. Pa.R.A.P. 302(a). Furthermore, because the issue of relevance is not before us, we decline to consider whether the probative value of this evidence is substantially outweighed by the possibility of unfair prejudice.

Accordingly, we reverse the September 8, 1995 order of the trial court and remand this case for further proceedings consistent with this Opinion.

Order **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**

CIRILLO, J., files a Dissenting Opinion in which SCHILLER, J., joins.

CIRILLO, President Judge Emeritus, dissenting.

Because I believe that the trial court properly excluded the Commonwealth's expert medical testimony regarding the absence of physical trauma to the victim, I respectfully dissent.

It is generally known that expert testimony is only admissible where the formation of opinion on a subject requires knowledge, information, or skill beyond that possessed by an ordinary juror. *See Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995); *see also Commonwealth v. Probst,* 398 Pa.Super. 44, 580 A.2d 832 (1990) (purpose of expert testimony is to aid jury in understanding matters beyond average layperson's knowledge or experience). An expert may not testify to matters that involve common knowledge, *Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830 (1992), or where the admission of such testimony will cause confusion or prejudice. *Commonwealth v. Montavo,* 439 Pa.Super. 216, 653 A.2d 700 (1995). Furthermore, expert witnesses may not testify to matters which will cause the jury to abdicate its fact-finding responsibility and defer to the assessment of the expert. *Commonwealth v. Brown,* 408 Pa.Super. 246, 596 A.2d 840 (1991) (citing *Commonwealth v. Carter,* 403 Pa.Super. 615, 589 A.2d 1133 (1991)).

In *Commonwealth v. McCleery,* 439 Pa.Super. 378, 654 A.2d 566 (1995), our court held that an expert's testimony regarding

the significance of the presence or absence of physical trauma in child sexual abuse cases was inadmissible because the prejudicial impact of the testimony clearly outweighed the probative value. In *McCleery,* the Commonwealth first introduced such testimony on direct examination in an effort to bolster the credibility of the victim. Our court found that the testimony effectively invaded the province of the jury "by encouraging them to abdicate their responsibility to ascertain the facts." *Id.* at 384, 654 A.2d at 569. Similarly, in *Commonwealth v. Garcia,* 403 Pa.Super. 280, 588 A.2d 951 (1991) (*en banc*), our court found that an expert's testimony regarding the behavioral patterns of a sexually abused victim is inadmissible when offered to explain the conduct of the victim in a case because it also tended to bolster the victim's testimony and usurp the jury's fact-finding role.

While I concede that there is a significant distinction between the type of evidence offered by the expert witnesses in *Garcia* and the present case,[1] unlike the majority, I do not believe that this distinction should compel different results. Both areas of testimony invade the jury's role and bolster the credibility of the witness/victim which is impermissible. Accordingly, I do not agree with the far-reaching effects of the majority's decision to overrule *Garcia* and *McCleery.*

Furthermore, the majority has compounded error by relying upon *Commonwealth v. Hernandez,* 420 Pa.Super. 1, 615 A.2d 1337 (1992), and broadly concluding that "this subject is appropriate for expert testimony because the physical condition of a sexual assault is not a matter that is typically within the knowledge of average jurors." In *Hernandez,* our court stated:

1. In *Garcia* the expert testified to **psychological** and **behavioral** issues of sexually abused children. *See Garcia,* 403 Pa.Super. 280, 588 A.2d 951 (1991) (*en banc*); *see also Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830 (1992) (expert testimony concerning typical behavior patterns exhibited by sexually abused children was not probative, and, therefore, not admissible at trial). By contrast, the present case involves expert testimony regarding **physical** or **scientific** results of sexually abused children.

It follows that a pediatrician ..., qualified as a medical expert, may testify that the physical facts observed and reported by the treating physician were consistent with the allegation of anal sodomy set forth in the history of the child. The medical history of a patient is customarily relied upon in practicing medicine. Consequently, it is not error for the expert to testify on cross-examination that his opinion assumes the truthfulness of the history supplied by the victim.

*Id.* at 14, 615 A.2d at 1343.

Instantly, the majority fails to recognize the following critical facts. The victim's criminal affidavit and complaint alleges ten acts of anal intercourse performed by the defendant over a three month period in 1993. The record reveals that the victim had never been physically examined by medical personnel prior to the Commonwealth expert's examination conducted on August 2, 1995—well over one year after the alleged instances of sexual assault. In essence, there was no prior history taken of the victim until the expert report in 1995. This, therefore, is not a situation like *Hernandez* where the expert testified on cross-examination in order to corroborate the truthfulness of a prior history supplied by the victim. The expert was not needed in order to prove consistency with established facts in the case.

Although cases have held that a physician may testify that physical facts he or she observes are consistent with sexual trauma, in *Hernandez, supra,* our court admitted such testimony on *cross-examination* and with respect to *positive* physical findings of rape trauma. Presently, the expert's evidence reveals a *lack* of any physical trauma to the victim. The findings in the expert's report were made nearly two years after the alleged assault. As a result, the jury may have reasonably concluded, without the aid of expert testimony, that an assault occurred because the trauma may have healed over this significant period of time.

While the majority notes that lay persons may not realize that lack of physical trauma is still consistent with sexual

abuse, the testimony's probative value is clearly outweighed by its prejudicial effect—especially in light of the fact that the Commonwealth solicitously attempted to admit this evidence on direct examination. I am careful to distinguish this case from instances where the Commonwealth seeks to admit an expert's findings after the defense has asserted that evidence of physical trauma is an element that must be proven in an assault case. In such cases, expert testimony regarding physical trauma may be properly offered as rebuttal evidence. Presently, however, the jury had no context in which to place the expert testimony—creating a situation that clearly would have served to confuse or prejudice the jury. *Montavo, supra.*

Based upon these critical fact-based distinctions and in keeping with the time-honored tradition of preserving the province of the jury, I would affirm the trial court.

SCHILLER, J., joins.