J-S24037-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
                                             :                PENNSYLVANIA
                  Appellee        :
                                             :
          v.                    :
                                           :
H.C.,                                 : 
                                           :
               Appellant     :        No. 3378 EDA 2017

Appeal from the Judgment of Sentence April 10, 2017
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006886-2015

BEFORE:     BENDER, P.J.E., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:         **FILED AUGUST 07, 2020**

H.C. (Appellant) appeals from the April 10, 2017 judgment of sentence entered after a jury found Appellant guilty of aggravated indecent assault of a child, indecent assault of a person less than 13 years of age, and endangering the welfare of a child (EWOC). Upon review, we vacate Appellant's judgment of sentence and remand for resentencing.

We provide the following background.

> Appellant was arrested on January 27, 2015 in connection with the sexual abuse of J.H., who at the time was six years old.[1]  []
> Appellant's actions came to light when J.H. told [S]tepmother[] that Appellant had "touched her private parts."  J.H. was subsequently interviewed by various experts, including Dr. June

---

[1] At that time, biological mother (Mother) split custody 50-50 with biological father (Father).  Stepmother resided in the house where Father lived. Appellant, Mother's paramour, resided with Mother and was akin to a stepfather.

*Retired Senior Judge assigned to the Superior Court.

Elcock-Messam, who testified that J.H. had sustained a laceration to her genitals.

Trial Court Opinion, 8/15/2019, at 2 (citation omitted). Appellant was charged with one count each of aggravated indecent assault, indecent assault, EWOC, corruption of minors, and disorderly conduct.

On August 12, 2015, a hearing was held on the Commonwealth's motion to allow J.H. to testify by alternative means, pursuant to 42 Pa.C.S. § 5985 (testimony by contemporaneous alternative method). On November 16, 2015, the trial court granted the motion to allow J.H. to testify via closed-circuit television at trial.[2]

Following several continuances, Appellant proceeded to a jury trial on January 10-13, 2017.[3] The Commonwealth presented testimony from J.H.

---

[2] In this order, the trial court also granted the Commonwealth's petition to admit out-of-court statements made by J.H. to Stepmother; Portia Nicholson from Delaware County Children and Youth Services; and Jodi Kaplan, a child forensic interview specialist from Delaware County Children's Advocacy Center, pursuant to 42 Pa.C.S. § 5985.1 (tender years hearsay exception), and denied Appellant's petition for a competency hearing. None of the motions disposed of in this order appears in the certified record.

[3] The Commonwealth proceeded to trial on the first three counts: aggravated indecent assault, indecent assault, and EWOC. On the first day of trial, the trial court granted the Commonwealth's request to amend the information as follows:

- Amend count one, aggravated indecent assault, 18 Pa.C.S. § 3125(a)(1), to aggravated indecent assault of a child, 18 Pa.C.S. § 3125(b);

*(Footnote Continued Next Page)*

(via live video from another room); Stepmother; Nicholson; Kaplan; and Dr. Elcock-Messam, an expert in the fields of general pediatrics and child abuse pediatrics, who examined J.H. The jury heard audio recordings of J.H.'s interviews with Nicholson (12/12/2014) and Kaplan (12/17/2014 and 1/2/2015), wherein J.H. disclosed details surrounding Appellant's kissing of her face and body, and his reaching inside her pants to penetrate her digitally, scratching her genitals with his fingernail in the process. Dr. Elcock-Messam testified that J.H. suffered a genital laceration that was consistent with J.H.'s account of Appellant's actions. In defense, Appellant and Mother testified that Appellant was never alone with J.H. At the conclusion of the trial, the jury found Appellant guilty as indicated above.

Prior to sentencing, the trial court ordered Appellant to undergo psychological and psychosexual evaluations, as well as an assessment by the Sexual Offenders Assessment Board. On April 10, 2017, the trial court sentenced Appellant to a term of 78 to 156 months of incarceration for aggravated indecent assault of a child, 16 to 32 months for indecent assault of a person less than 13 years of age, and 16 to 32 months for EWOC. All

*(Footnote Continued)* ————————————

- Amend count two, indecent assault, 18 Pa.C.S. § 3126(a)(1) (without consent), to subsection (a)(7) (complainant less than 13 years of age); and

- Amend the offense date from December 17, 2014 to between November 30, 2014 and December 17, 2014.

*See* N.T., 1/10/2017, at 9-11.

- 3 -

sentences were set to run consecutively, for a total aggregate sentence of 110 to 220 months of incarceration.[4]  Appellant was also required to register as a sex offender for life.

On April 19, 2017, Appellant filed a post-sentence motion challenging, *inter alia*, the weight and sufficiency of the evidence.[5]  On September 8, 2017, the trial court denied Appellant's post-sentence motion.

This timely-filed notice of appeal followed.[6]  On appeal, Appellant raises five issues, which we have reordered for ease of disposition.  ***See*** Appellant's Brief at 7-8.

_____

[4] This converts roughly to an aggregate term of 9.16 to 18.33 years of incarceration.

[5] Appellant sought leave to file a supplemental motion following transcription of the notes of testimony.  The relevant transcripts were filed by May 9, 2017.  However, Appellant did not file a supplemental motion.

Because it was approaching the 120-day deadline pursuant to Pa.R.Crim.P. 720(B)(3), the trial court granted Appellant's oral request for a 30-day extension to decide Appellant's post-sentence motion.  Order, 8/8/2017.

[6] We note our displeasure with the delays holding up this Court's review. This case originated in 2015 and did not proceed to trial until 2017 due to several continuances.  Following the filing of Appellant's notice of appeal, Appellant timely filed his ordered Pa.R.A.P. 1925(b) statement on October 18, 2017.  However, the trial court inexplicably did not file its Pa.R.A.P. 1925(a) opinion until August 16, 2019, almost two years later.  Once this Court finally received the trial court's opinion and the record was transmitted, our review was again delayed by Appellant twice seeking an extension of time to file his brief.  Despite our granting these requests, Appellant filed his brief six days late.  Pursuant to Pa.R.A.P. 2188, "If an appellant fails to file his ... brief ... within the time prescribed by these rules, or within the time as extended, an appellee may move for dismissal of the
*(Footnote Continued Next Page)*

<u>J.H.'s Closed-Circuit Television Testimony</u>

We first address Appellant's claim that the trial court erred in allowing J.H. to testify by closed-circuit television, thereby denying Appellant his right to face his accuser. ***Id.*** at 7, 26. We review this claim mindful of the following.

> Section 5985 of the Judicial Code governs testimony by a contemporaneous alternative method:
>
> > **(a) Contemporaneous alternative method.—** Subject to subsection (a.1), in any prosecution or adjudication involving a child victim [], the court may order that the testimony of the child victim [] be taken under oath or affirmation in a room other than the courtroom and transmitted by a contemporaneous alternative method. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child victim [], including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child victim [] but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child victim [] shall proceed in the same manner as normally permitted.

*(Footnote Continued)* ─────────────

matter." The Commonwealth filed its brief after one extension, and did not move for dismissal based upon Appellant's late-filed brief. While we do not dismiss this appeal, we caution all parties against such unnecessary and significant delays in the future.

**(a.1) Determination.**—Before the court orders the child victim [] to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim [] suffering serious emotional distress that would substantially impair the child victim's [] ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child victim [], either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim [] in a medical or therapeutic setting.

42 Pa.C.S.[] § 5985(a), (a.1).

In **Commonwealth v. Charlton**, 902 A.2d 554, 559 (Pa. Super. 2006), [] the Commonwealth presented the expert testimony of the child victim's treating psychotherapist. The psychotherapist testified that the victim suffered depression, suicidal thoughts, and post-traumatic stress disorder[,] which likely would impact her ability to testify effectively. Likewise, the psychotherapist testified that the defendant's presence in the courtroom would send the victim "into an emotional tailspin." **Id.** Given this testimony, we found no error in the trial court's decision to permit the victim to testify via closed[-]circuit television. **Id.**

Similarly, in **Commonwealth v. Torres–Kuilan**, 156 A.3d 1229, 1230 (Pa. Super. 2017), the victim, seven years old at the time of trial, broke down and cried and refused to enter the courtroom to testify. The trial court conducted an *in camera* hearing to determine whether to permit the child to testify via closed[-]circuit television. The court heard testimony from the victim and a woman who had been keeping the victim company that morning and ultimately decided to permit the victim to testify remotely. **Id.** We affirmed, reasoning that the trial court's observations are a sufficient basis for permitting remote testimony under § 5985(a.1)(1).

***Commonwealth v. Tyrrell***, 177 A.3d 947, 951-52 (Pa. Super. 2018) (some quotation marks and citations omitted).

We note that "[f]ew published decisions address § 5985, and those that do have not announced a standard for reviewing the trial court's decision. In ***Torres–Kuilan***, this Court employed the principles of statutory construction to determine whether the Commonwealth's proffer complied with § 5985's terms." ***Tyrrell***, 177 A.3d at 952 (citation omitted).

Instantly, the trial court held a hearing on August 12, 2015 to address the Commonwealth's request pursuant to section 5985. The Commonwealth presented testimony from Stepmother, Nicholson, and Kaplan, all of whom testified about J.H.'s demeanor when speaking about the incident. When J.H. disclosed to Stepmother in early December 2014, J.H. slouched and covered her face. N.T., 8/12/2015, at 12. Nicholson interviewed J.H. on December 12, 2014, and noted that during the interview J.H. said she was afraid, and was shaking with tears in her eyes throughout the interview. ***Id.*** at 34-35. During Kaplan's December 17, 2014 interview, J.H. appeared frightened prior to the interview after Mother and Mother's sister-in-law were yelling in the waiting area. ***Id.*** at 39. When Kaplan questioned J.H. about Appellant, J.H. covered her face and began shaking and crying. ***Id.*** at 40. During Kaplan's second interview on January 2, 2015, J.H. shook less and appeared less frightened, which J.H. attributed to her not having seen

Appellant recently. *Id.* The Commonwealth introduced audiotape recordings of Nicholson's interview and Kaplan's two interviews.

Additionally, Stepmother testified that J.H. misses Appellant, is anxious about him being in trouble, and expresses that she wants things to go back to normal as long as Appellant does not do what he did again. *Id.* at 16. According to Stepmother, "to go in front of [Appellant] and to know that he's in trouble is just going to be too much for her. She's already going through separation anxiety." *Id.* at 15. Stepmother also testified regarding J.H.'s change in behavior; prior to the incident J.H. was very neat and organized, but after the incident she began to rip apart her room. *Id.* at 14.

The trial court took the matter under advisement, and on November 16, 2015, granted the Commonwealth's motion for J.H. to testify contemporaneously by alternative means. In its Rule 1925(a) opinion, the trial court explained that in light of the testimony presented at the August 12, 2015 hearing, it concluded that "forcing J.H. to testify in court in front of her abuser would undoubtably [*sic*] cause her to suffer serious emotional distress." Trial Court Opinion, 8/16/2019, at 3. Specifically, the trial court credited J.H.'s behavior change, demeanor of crying and shaking during interviews, and stating that she could not speak to Nicholson because she was afraid due to her "mom's boyfriend [being] dangerous." *Id.* (record citations and internal quotation marks omitted).

Although framed as a challenge to the trial court's permitting J.H. to testify by closed-circuit television pursuant to section 5985, Appellant's argument on appeal is slightly different. In the argument section of his brief, Appellant argues that the trial court erred in permitting J.H. to testify via closed-circuit television "without conducting a hearing to make any determination as to whether [J.H.] was incompetent to testify, due to her capacity to communicate being overwhelmed by serious emotional distress." Appellant's Brief at 27. According to Appellant, the failure to test J.H.'s competency violated Appellant's "constitutional right to confront his accuser" under the United States and Pennsylvania constitutions. *Id.* Thus, Appellant's arguments on appeal focus on (1) the lack of a competency hearing, and (2) an alleged violation of the Confrontation Clause due to J.H.'s testifying by closed-circuit television.

We begin with Appellant's argument that the trial court erred in failing to conduct a competency hearing prior to granting the Commonwealth's request to permit J.H. to testify by contemporaneous alternative means, mindful of the following. "A decision on the necessity of a competency hearing is addressed to the discretion of the trial court." *Commonwealth v. Delbridge*, 855 A.2d 27, 39 (Pa. 2003) (citation omitted).

> Although competency of a witness is generally presumed, Pennsylvania law requires that a child witness be examined for competency. *See* [] *Delbridge*, []855 A.2d at 39 (citing *Rosche v. McCoy*, [] 156 A.2d 307, 310 ([Pa.] 1959) and Pa.R.E. 601).[8] As we have recently reiterated, "this Court historically has required that witnesses under the age of fourteen be subject to

- 9 -

judicial inquiry into their testimonial capacity." ***Commonwealth v. Ali,*** 10 A.3d 282, 300 n. 11 (Pa. 2010). "A competency hearing of a minor witness is directed to the mental capacity of that witness to perceive the nature of the events about which he or she is called to testify, to understand questions about that subject matter, to communicate about the subject at issue, to recall information, to distinguish fact from fantasy, and to tell the truth." ***Delbridge, supra*** at 45. In Pennsylvania, competency is a threshold legal issue, to be decided by the trial court.

---

[8] Pa.R.E. 601(a) provides as follows:

> **General Rule.** Every person is competent to be a witness except as otherwise provided by statute or in these Rules.

The Comment to Rule 601 expressly states that Pa.R.E. 601 "is intended to preserve existing Pennsylvania law."

In ***Rosche*** [], this Court stated that, under the prevailing rule, competency was presumed when the witness was over 14 years of age; however, when the witness was under 14 years of age, "there must be judicial inquiry as to mental capacity, which must be more searching in proportion to chronological immaturity."

***Commonwealth v. Hutchinson***, 25 A.3d 277, 289-90 (Pa. 2011).

Before reaching the merits, we must address whether Appellant has preserved this issue for our review. In Appellant's Rule 1925(b) statement, he asserted that "[t]he trial court erred in not allowing [Appellant] to face his accuser and permitting the victim to testify at trial by video television." Pa.R.A.P. 1925(b) Statement, 10/18/2017, at ¶ 1. Completely absent is any reference to the trial court's failure to conduct a competency hearing for J.H. ***See Commonwealth v. Scott***, 212 A.3d 1094, 1112 (Pa. Super. 2019) (observing that "issues not raised in a Rule 1925(b) statement will be

- 10 -

deemed waived for review") (citation omitted). Accordingly, this issue is waived.

As to Appellant's Confrontation Clause argument, the current version of section 5985 was specifically amended to comport with the Confrontation Clause after the prior version was found to violate it.

> [Sections 5984 and 5985] were deemed unconstitutional because they allowed the use of a child's videotaped depositions or testimony by closed-circuit television if the court approved their usage upon "good cause shown." This standard was deemed insufficient to afford an accused his or her constitutional guarantees to confront a witness "face to face" as provided for by the Pennsylvania Constitution.[4] Accordingly, the statutes were amended to require the trial court to find that "testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim [] suffering serious emotional distress that would substantially impair the child victim's [] ability to reasonably communicate." 42 Pa.C.S.[] §§ 5984(b) and 5985(a.1).
>
> _____
> [4] In 2003, the citizens of this Commonwealth voted to amend Article 1, Section 9 of the Pennsylvania Constitution. The amendment changed the right of an accused to confront his accuser "face to face" to the right "to be confronted with the witnesses against him."

**_Commonwealth v. Kriner_**, 915 A.2d 653, 660 (Pa. Super. 2007).

Based on the hearing testimony discussed above, we discern no error in the trial court's conclusion that J.H.'s testifying in Appellant's presence would result in J.H. suffering serious emotional distress that would impair substantially her ability to communicate reasonably. Having satisfied this standard, Appellant's right to confront the witnesses against him was not violated by J.H.'s closed-circuit television testimony, as Appellant had the

opportunity to observe and hear J.H., confer with counsel regarding his defense, and the examination and cross-examination of J.H. occurred as if she were in the courtroom. Accordingly, the trial court's decision to permit J.H. to testify by closed-circuit television pursuant to section 5985 did not violate the Confrontation Clause, and Appellant is not entitled to relief on this claim.

## Expert testimony

We next review Appellant's claim that the trial court erred in allowing the Commonwealth's expert witness to testify "that Appellant had committed a sexual assault of the alleged victim, where that testimony went to the ultimate issue in the case and invaded the province of the jury[.]" Appellant's Brief at 7. Specifically, Appellant argues that Dr. Elcock-Messam's statement that the laceration was consistent with J.H.'s description of Appellant's conduct was a determination that could have been made by the jurors based on their "common sense assessment of the facts, without the aid of expert testimony." Appellant's Brief at 32.

We review this claim mindful of the following.

> The admissibility of evidence is within the sound discretion of the trial court, and this Court will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. To the extent that this case presents a question of law, our standard of review is *de novo*, and our scope is plenary.

- 12 -

*Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014) (citations omitted).

Pennsylvania courts permit expert testimony as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Conversely, expert testimony is not permitted on matters of common knowledge. *Commonwealth v. Hernandez*, [] 615 A.2d 1337, 1343 ([Pa. Super.] 1992). Expert testimony may not be used to bolster the credibility of witnesses because witness credibility is solely within the province of the jury.

In determining the admissibility of expert testimony on matters related to sexual assaults, our courts have distinguished between testimony regarding physical facts and testimony regarding the behavior of victims. Generally, the conduct or behavior of victims has been held not to be a proper subject for expert testimony because such testimony tends to encroach upon the jury's function of evaluating witness credibility. Testimony regarding physical facts, however, has been held to be admissible.

For example, in *Hernandez,* a panel of this Court held that "a pediatrician ..., qualified as a medical expert, may testify that the physical facts observed and reported by the treating physician were consistent with the allegation of anal sodomy." *Id.* [] at 1343. In making this determination, we did not expressly state whether the pediatrician testified regarding the absence of evidence of physical trauma or the presence of such evidence. We also concluded that this testimony concerned a matter that was not within the common knowledge of an average juror. *Id.* Further, because the witness was informing the jury about objective and verifiable physical facts, we concluded that his testimony did not impermissibly withdraw "the issue of witness credibility from the jury." *Id.* In other words, because the witness was testifying about the physical condition of the victim, the purpose of his testimony was not simply to bolster the credibility of the victim. Likewise, in *Commonwealth v. Seigrist,* [] 385 A.2d 405, 410 n. 7 ([Pa. Super.] 1978), we concluded that an expert medical witness could testify that the physical condition of an alleged rape victim was consistent with her rape allegations.

***Commonwealth v. Johnson***, 690 A.2d 274, 276 (Pa. Super. 1997).

At trial, Dr. Elcock-Messam testified on direct examination and redirect examination that the laceration was consistent with J.H.'s proffered history of Appellant's conduct, *i.e.*, digital penetration of J.H.'s genitalia. N.T., 1/12/2017, at 31, 44. Specifically, the following exchanges occurred.

> [ASSISTANT DISTRICT ATTORNEY (ADA)]: Within a reasonable degree of medical certainty is that scratch consistent with a fingernail?
>
> [DR. ELCOCK-MESSAM]: That scratch could be consistent with a fingernail.
>
> [ADA]: And within a reasonable degree of medical certain[t]y is that scratch consistent with digital penetration of the genitalia?
>
> [DR. ELCOCK-MESSAM]: Of the genitalia yes.
>
> [ADA]: And with a reasonable degree of medical certainty, doctor, is that scratch consistent with the history that [J.H.] gave you, what [J.H.] says happened to her?
>
> [DR. ELCOCK-MESSAM]:  It is consistent with that history.
>
> ***
>
> [ADA]: So the labial adhesions were something else you found, but to keep our eye on the ball is the laceration consistent or inconsistent with digital penetration of the genitalia?
>
> [DR. ELCOCK-MESSAM]: It is consistent with digital penetration.

***Id.***

Appellant's counsel did not object to this testimony at the time of trial. "We have long held that [f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." ***Commonwealth v.***

***Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) (citations and quotation marks omitted).  Because Appellant's counsel failed to object at trial, this claim is waived.[7]

Weight of the evidence

We next review Appellant's claim that the trial court erred in denying his post-sentence motion challenging the weight of the evidence for his convictions because "the Commonwealth presented [Stepmother] who clearly perjured herself, and there were glaring inconsistencies in the account of [J.H.]"  Appellant's Brief at 7.

"A verdict is against the weight of the evidence 'where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'"  ***Commonwealth v. Williams***, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting ***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa. Super. 2003)).  We examine challenges to the weight of the evidence according to the following standard.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so

---

[7] Even if not waived, it was clearly the type of testimony that is permissible by an expert witness in a sexual abuse case.  ***See Johnson***, 690 A.2d at 276.  Accordingly, Appellant would not be entitled to relief on this claim.

that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

Instantly, Appellant raised boilerplate weight challenges in his post-sentence motion, arguably preserving this issue for appeal. *See* Post-Sentence Motion, 4/19/2017, at ¶¶ 5(VII), 5(VIII), 5(VIX). However, Appellant failed to raise a weight issue in his Rule 1925(b) statement. *See Scott*, 212 A.3d at 1112 (observing that "issues not raised in a Rule 1925(b) statement will be deemed waived for review") (citation omitted). Accordingly, this issue is waived.

## Sufficiency of the Evidence

We next review Appellant's claim challenging the sufficiency of the evidence to sustain his EWOC conviction. Appellant's Brief at 8.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

- 16 -

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Johnson***, 192 A.3d 1149, 1155 (Pa. Super. 2018) (citation omitted).

Instantly, the trial court found this issue waived because Appellant failed to specify which elements of which crimes he intended to challenge on appeal in his Rule 1925(b) statement. ***See*** Trial Court Opinion, 8/16/2019, at 5; Pa.R.A.P. 1925(b) Statement, 10/18/2017, at ¶ 4 ("The evidence presented at trial was insufficient as a matter of law to support the convictions of the defendant on the charges of Aggravated Indecent Assault of Child, Indecent Assault Person Less than 13 Years of Age, Endangering Welfare of Children, Parent/Guardian/Other Commits Offense[.]").

We have repeatedly held that [i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. … Therefore, when an appellant's 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient[,] ... the sufficiency issue is waived on appeal.

***Commonwealth v. Ellison***, 213 A.3d 312, 320-21 (Pa. Super. 2019) (citations and quotation marks omitted). Thus, we agree with the trial court that Appellant has waived any sufficiency claim he attempted to raise in his Pa.R.A.P. 1925(b) statement.

- 17 -

However, Appellant's purported sufficiency claim on appeal is actually a challenge to the grading of his EWOC conviction. *See* Appellant's Brief at 33. "[A] claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence. [A] challenge to the legality of sentence is never waived and may be the subject of inquiry by the appellate court *sua sponte*." ***Commonwealth v. Hoffman***, 198 A.3d 1112, 1123 (Pa. Super. 2018) (citations and quotation marks omitted). Accordingly, Appellant's challenge to the grading of his EWOC conviction is properly before us, and we *sua sponte* review the grading of his convictions for aggravated indecent assault and indecent assault, as well. "Our standard of review is *de novo*, and the scope of our review is plenary." ***Id.*** (citation omitted).

Instantly, Appellant was charged with EWOC pursuant to 18 Pa.C.S. § 4304(a), as a felony of the third degree. The version of the EWOC statute applicable from the time of Appellant's conduct until his sentencing provided as follows.

> **(a) Offense defined.--**
>
> > (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.
> >
> > (2) A person commits an offense if the person, in an official capacity, prevents or interferes with the making of a report of suspected child abuse under 23 Pa.C.S. Ch. 63 (relating to child protective services).

- 18 -

(3) As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.

**(b) Grading.--**An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

18 Pa.C.S. § 4304 (effective 1/29/2007 to 8/27/2017).[8]

---

[8] The current version of the statute altered subsection (b) as follows.

**(b) Grading.--**

(1) Except as provided under paragraph (2), the following apply:

(i) An offense under this section constitutes a misdemeanor of the first degree.

(ii) If the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

(iii) If, in the commission of the offense under subsection (a)(1), the actor created a substantial risk of death or serious bodily injury, the offense constitutes a felony of the third degree.

(iv) If the actor's conduct under subsection (a)(1) created a substantial risk of death or serious bodily injury and was part of a course of conduct, the offense constitutes a felony of the second degree.

(2) The grading of an offense under this section shall be increased one grade if, at the time of the commission of the offense, the child was under six years of age.

18 Pa.C.S. § 4304 (effective 8/28/2017).

According to Appellant, the evidence could not support a finding of course of conduct required for a third-degree-felony grading because the allegations comprised a single event, and thus he could only be charged and convicted of EWOC as a misdemeanor of the first degree. Appellant's Brief at 33.

> In ***Commonwealth v. Popow***, 844 A.2d 13 (Pa. Super. 2004), we addressed this issue. In that case, Popow was charged with various offenses including endangering the welfare of a child, following an altercation between him, his ex-girlfriend, and others. ***Id.*** at 15. At one point during the altercation, Popow picked up his four-year-old daughter, and when his ex-girlfriend and others tried to retrieve the child from him, Popow fell down a flight of stairs while holding the child. ***Id.*** Popow was convicted and sentenced on the endangerment charge graded as a felony. ***Id.*** On appeal, he challenged the legality of his sentence, asserting (1) neither the information nor the evidence made out a course of conduct that would raise the charge from a misdemeanor to a felony and (2) the jury was not instructed to make a finding on course of conduct. ***Id.*** We agreed, concluding that "in order to be graded as a third-degree felony, the Commonwealth must allege in the information and present evidence at trial of the additional factor of 'course of conduct,' and the jury must be instructed on such." ***Id.*** at 18. We thus remanded for resentencing. ***Id.*** at 18.

***Hoffman***, 198 A.3d at 1123-24.

Here, Appellant proceeded to trial on charges of aggravated indecent assault of a child, indecent assault, and EWOC based on allegations of a single event wherein Appellant kissed J.H. and digitally penetrated her genitalia. At trial, the Commonwealth presented evidence of that single event. The Commonwealth did not request, and the trial court did not provide, a jury instruction on course of conduct related to any of Appellant's

- 20 -

charges.  As such, we conclude that the trial court erred when it sentenced Appellant for EWOC as a felony of the third degree.  ***See id.***

As noted *supra*, Appellant's charge for indecent assault was amended at trial to indecent assault of a child pursuant to 18 Pa.C.S. § 3126(a)(7), graded as a felony of the third degree.  The indecent assault statute provides, in pertinent part, as follows.

> **(b) Grading.--**Indecent assault shall be graded as follows:
>
> ***
>
> (3) An offense under subsection (a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree:
>
> (i) It is a second or subsequent offense.
>
> (ii) There has been a course of conduct of indecent assault by the person.
>
> (iii) The indecent assault was committed by touching the complainant's sexual or intimate parts with sexual or intimate parts of the person.
>
> (iv) The indecent assault is committed by touching the person's sexual or intimate parts with the complainant's sexual or intimate parts.

18 Pa.C.S. § 3126(b).  The record does not support a finding that this was a second or subsequent offense, a course of conduct, or that Appellant's sexual or intimate parts came into contact with J.H.'s.  Accordingly, the trial court erred in sentencing Appellant for indecent assault as a felony of the third degree.

- 21 -

Based on the foregoing, we vacate the judgment of sentence imposed for EWOC and indecent assault and remand for resentencing with consideration of the Sentencing Guidelines for those charges graded as misdemeanors of the first degree. *See Hoffman*, 198 A.3d at 1125; 18 Pa.C.S. § 4304; 18 Pa.C.S. § 3126(b). Because the trial court ordered Appellant's sentences to run consecutively, we remand for resentencing on all counts,[9] as our ruling may upset the court's overall sentencing scheme.[10] *Id.* (citing *Commonwealth v. Serrano*, 61 A.3d 279, 287-88 (Pa. Super. 2013)).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/20

---

[9] In doing so, we observe that Appellant's amended charge of aggravated indecent assault of a child was graded properly as a felony of the first degree. *See* 18 Pa.C.S. § 3125(c)(2) ("An offense under subsection (b) is a felony of the first degree.").

[10] In light of our disposition, Appellant's discretionary-aspects-of-sentencing claim is moot. *See Commonwealth v. Tanner*, 61 A.3d 1043, 1046 n.3 (Pa. Super. 2013).