J-A27029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAMUEL BENJAMIN ARTHUR | : | |
| | : | |
| Appellant | : | No. 2867 EDA 2019 |

Appeal from the PCRA Order Entered September 30, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0002488-2013

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY NICHOLS, J.:                    Filed: March 5, 2021

Appellant Samuel Benjamin Arthur appeals from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition.  Appellant argues that the PCRA court erred in rejecting his claims that trial counsel was ineffective. Specifically, he contends counsel was ineffective for: (1) failing to object to expert testimony that the victim was sexually abused, despite a lack of physical evidence of abuse; (2) advising him not to testify at trial; and (3) failing to cross-examine the victim's mother on her motive to lie.  Following our review of the record, we affirm on the basis of the PCRA court's opinion.

Appellant was arrested after a family friend's daughter, J.A., revealed to her father that Appellant had sexually abused her a few years earlier.  J.A.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

was four or five years old at the time of the abuse, which she alleged occurred during times Appellant babysat her after school.

Following trial, the jury convicted Appellant of rape of a child, aggravated indecent assault of a child, indecent assault of a child under the age of thirteen, endangering the welfare of a child, corruption of minors and terroristic threats.[2] The trial court sentenced Appellant to an aggregate term of fifteen to thirty years' incarceration, followed by five years' probation.

On November 20, 2016, Appellant filed post-sentence motions seeking a new trial and reconsideration of his sentence. The trial court denied Appellant's post sentence motions on December 14, 2016. Appellant timely appealed to this Court, but we dismissed the appeal because Appellant failed to file a docketing statement pursuant to Pa.R.A.P. 3517. Appellant thereafter filed a PCRA petition seeking the reinstatement of his direct appeal rights. The PCRA court issued an order restoring Appellant's direct appeal rights *nunc pro tunc*. Appellant then filed a direct appeal, and this Court affirmed on June 14, 2018. *See Commonwealth v. Arthur*, 2300 EDA 2017 (Pa. Super. filed May 1, 2018) (unpublished mem.). Appellant did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

Appellant subsequently filed a timely, counseled PCRA petition, alleging ineffective assistance of counsel. The PCRA court issued a Pa.R.Crim.P. 907 notice, which concluded Appellant's petition failed to raise meritorious issues.

---

[2] 18 Pa.C.S. §§ 3121(c), 3125(b), 3126(a)(7), 4304(a)(1), 6301(a)(1)(ii), 2706(a)(1), respectively.

Appellant filed a response to the Rule 907 notice. On September 30, 2019, the PCRA court dismissed Appellant's petition.

Appellant timely appealed, and the PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement. Appellant timely filed a 1925(b) statement. The PCRA court then filed a Rule 1925(a) opinion addressing Appellant's claims.

Appellant presents three issues for our review:

1. Did the PCRA court abuse its discretion when it held Appellant's trial counsel was not ineffective for failing to object to the Commonwealth's expert witness's testimony that [J.A] was sexually abused in the absence of any physical evidence?

2. Did the PCRA court abuse its discretion when it held Appellant's trial counsel was not ineffective for advising Appellant not to testify?

3. Did the PCRA court abuse its discretion when it held Appellant's trial counsel was not ineffective for failing to cross-examine [J.A.'s mother] on her motive to lie?

Appellant's Brief at 2.

Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the PCRA court, we affirm on the basis of the PCRA court's opinion. *See* PCRA Ct. Op., 11/19/19, at 1-18. Specifically, we find that the PCRA court properly concluded that trial counsel was not ineffective for failing to object to Dr. Philip Scribano's testimony regarding his sexual abuse diagnosis. Contrary to Appellant's assertion, Dr. Scribano's testimony did not improperly bolster J.A.'s credibility. *See id.* at 7-10. Nor did his expert medical testimony usurp the credibility-determining function of the

jury. ***See id.*** at 9-10. We also agree with the PCRA court that trial counsel informed Appellant of his constitutional right to testify, which Appellant waived freely during an on-the-record colloquy. ***See id.*** at 12. Finally, we agree with the PCRA court that Appellant's third claim lacks merit because trial counsel did in fact cross-examine J.A.'s mother about her anger toward Appellant's wife and, in turn, notified jurors of a potential source of bias. ***See id.*** at 16.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/5/21

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     LOWER COURT DOCKET:
    :     No. CP-46-CR-0002488-2013

v.     :

    :

SAMUEL BENJAMIN ARTHUR     :     2867 EDA 2019

## OPINION

**Page, J.**                                                  *November 19, 2019*

Defendant appeals the Order of this Court dated September 30, 2019, denying Defendant's petition for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541-46. For the reasons set forth below, Defendant's appeal is without merit. Therefore, this Court's order dismissing Defendant's PCRA petition should be affirmed.

## FACTS AND PROCEDURAL HISTORY

On February 28, 2013, Defendant was charged with fifty-four counts related to the rape of a child, J.A. Following a three-day jury trial from July 27, 2015 to July 29, 2015, Defendant was found guilty of two counts of rape of a child and one count each of aggravated indecent assault of a child, indecent assault of a child under the age of thirteen, endangering the welfare of a child, corruption of minors, and terroristic threats on docket CP-46-CR-0002488-2013. On October 31, 2016, following several continuances, this Court sentenced Defendant to fifteen (15) to thirty (30) years' incarceration plus five (5) years' probation.

On November 20, 2016, post-sentence motions for a new trial/arrest of judgment and reconsideration of sentence were filed. This Court denied the post-sentence motions, and an appeal was timely filed on December 14, 2016. Thereafter, the appeal was dismissed on February 17, 2017, for failure of appellant to comply with Pa.R.A.P. 3517. On June 7, 2017,

1

Defendant filed a PCRA petition requesting that his direct appeal rights be reinstated *nunc pro tunc*. The Commonwealth filed a letter stating that they did not oppose the reinstatement of Defendant's direct appeal rights. On June 16, 2017, this Court granted the PCRA petition and reinstated Defendant's direct appeal rights. Defendant filed a direct appeal to the Pennsylvania Superior Court raising one issue: "Did the Trial Court abuse its discretion in failing to grant [Appellant's] post-sentence motion for a new trial based on the admission of inadmissible evidence that bolstered the complainant-victim's credibility?" *Commonwealth v. Arthur*, 2300 EDA 2017, at 2 (May 1, 2018) (memorandum) (citing Appellant's Brief at 2). The Pennsylvania Superior Court affirmed Defendant's judgment of sentence, finding his claim waived for failure to make a timely and specific objection at trial. *Id.* at 4. Further, the Pennsylvania Superior Court noted that even if Defendant "had properly preserved his claims for appeal...we would conclude that the trial court's opinion filed on August 14, 2017, comprehensively disposed of them." *Id.* at 4, n.3.

Defendant subsequently filed a timely PCRA petition, alleging ineffective assistance of counsel. This Court provided its Notice of Intent to Dismiss on September 6, 2019 and its Dismissal of the PCRA Petition on September 30, 2019, following the Defendant's response in opposition on September 26, 2019. Defendant filed a timely Notice of Appeal on October 4, 2019.

## ISSUES

Defendant's timely Concise Statement is reproduced verbatim below:

1. This Court erred by dismissing, without an evidentiary hearing, Defendant's claim that prior counsel was ineffective for failing to object to the Commonwealth's expert testimony, as averred in his PCRA petition and in his Response to Rule 907 Notice. In particular, the holding in *Maconeghy* is based on previous holdings by our Supreme Court that expert testimony, without a basis in fact, that serves only to bolster the credibility of the witness is inadmissible. *See Commonwealth v. Seese*, 517 A.2d 920, 922

2

(Pa. 1986) ("[I]t was an error to admit expert testimony as to credibility of children who are of an age similar to that of the prosecution's chief witness, the crime victim."); *Commonwealth v. O'Searo*, 352, A.2d 30 (Pa. 1976) (the challenged testimony does not have to invoke the words 'credible', 'veracity', or 'truthfulness' to fall into this prohibition); *see also, Commonwealth v. Smith*, 567 A.2d 1080 (Pa. Super. 1989) (finding ineffectiveness where trial counsel failed to object when the expert witness gave her personal opinion on the victim's credibility, noting that the decision was "augmented" by the fact the witness was called as an expert).[1] [Footnote in original].

2. This Court erred by dismissing, without an evidentiary hearing, Defendant's claim that trial counsel was ineffective for advising Defendant not to testify, as averred in his PCRA petition and in his Response to Rule 907 Notice.
3. This Court erred by dismissing, without an evidentiary hearing, Defendant's claim that trial counsel was ineffective for failing to cross examining E.S. on her motive to lie, as averred in his PCRA petition and in his Response to Rule 907 Notice.

## **STANDARD OF REVIEW**

The standard of review of the order of a PCRA court is whether the determination is supported by the evidence of record and free of legal error. *Commonwealth v. Reaves*, 923 A.2d 1119, 1124 (Pa. 2007). The Appellate Court views the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. Ct. 2001).

In reviewing petitions alleging ineffective assistance of counsel, the question of whether ineffective counsel caused prejudice to a defendant is a question of law. *Commonwealth v. Mallory*, 941 A.2d 686, 694 (2008). Where the Appellant raises questions of law, an Appellate

---

[1] That a certification from prior counsel was not attached to the petition is not fatal. The Superior Court routinely remands PCRA matters to ascertain whether prior counsel's actions were reasonable, implicitly recognizing that the reasoning had not been previously proffered. *See Commonwealth v. Cousar*, 154 A.3d 287, 299 (Pa. 2017) (noting the "preference for an evidentiary hearing on the reasonableness of counsel's actions or inactions respecting a claim of ineffectiveness prior to a determination that counsel's actions were, in fact, reasonable.); *Commonwealth v. Carson*, 913 A.2d 220 (Pa. 2006) (remanding for an evidentiary hearing to develop a factual record to supporting a finding of whether counsel's act or omission was reasonable) (footnote in original).

3

Court's standard of review is *de novo* and its scope of review plenary. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

## ANALYSIS

In a PCRA petition, ineffective assistance of counsel must "so undermine the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S. § 9543 (a) (2) (ii). Prejudice is present where there is a reasonable probability, but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Duffey*, 855 A.2d 764, 768–69 (Pa. 2004).

To prove ineffective assistance of counsel, the defendant must prove the three prongs of *Pierce:* 1) that the claim has arguable merit 2) that counsel lacked a reasonable basis for his or her chosen course, and 3) that the defendant was prejudiced thereby, i.e., that there is a reasonable probability that the outcome of the proceedings would have been different. *Com. v. Duffey*, 855 A.2d 764, 768–69 (Pa. 2004); *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001). The failure to satisfy any prong of this test will cause the entire claim to fail. *See Commonwealth v. Bridges,* 584 Pa. 589, 886 A.2d 1127, 1131 (2005). Finally, "counsel is presumed to be effective and [the defendant] has the burden of proving otherwise." *Commonwealth v. Pond,* 846 A.2d 699, 708 (Pa.Super.2004) (citation omitted).

"Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita*, 606 Pa. 1, 993 A.2d 874, 887 (2010) (quoting *Commonwealth v. Howard*, 553 Pa. 266, 719 A.2d 233, 237 (1998)). "A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course

4

actually pursued." *Id.* A claim of ineffectiveness generally cannot succeed "through comparing, in hindsight, the trial strategy employed with alternatives not pursued." *Commonwealth v. Miller*, 572 Pa. 623, 819 A.2d 504, 517 (2002); *Commonwealth v. Sneed*, 616 Pa. 1, 19–20, 45 A.3d 1096, 1107 (2012).

"Particularly when PCRA claims require examination of trial strategy, it is not enough to take a cold record, state alternative choices counsel could have made, and then declare an entitlement to relief. *Id.* Mere conclusory allegations, without some proffer as to what counsel would say in response to the allegations are insufficient to establish entitlement to relief. *Id.* Thus, a supporting document from counsel stating his reasons for the course chosen is generally necessary to establish potential entitlement to a hearing. *Id. See*, e.g., Pa.R.Crim.P. 902(A)(12)(b) (PCRA petition shall contain facts supporting each ground for relief; if supporting facts do not appear of record "affidavits, documents and other evidence showing such facts" to be identified)." *Commonwealth v. Cousar*, 154 A.3d 287, 299–300 (Pa. 2017). It is axiomatic that counsel will not be considered ineffective for failing to pursue meritless claims. *Commonwealth v. Parker*, 503 Pa. 336, 341, 469 A.2d 582, 584 (1983); *Commonwealth v. Pursell*, 555 Pa. 233, 255, 724 A.2d 293, 304 (1999).

## I. Counsel's Failure to Object to Commonwealth Expert Testimony

Defendant's first allegation of error is that this Court should have found Defendant's trial counsel ineffective for failing to object to testimony from the Commonwealth expert, Dr. Scribano. As a preliminary matter, this Court notes that Defendant has already raised this underlying claim—that this Court erred in admitting testimony from Dr. Scribano for improperly bolstering the victim's credibility—on direct appeal to the Pennsylvania Superior Court. The Pennsylvania Superior Court found this claim waived because Defendant failed to make a

5

specific, on-the-record objection. *Commonwealth v. Arthur*, 2300 EDA 2017, at 4 (May 1, 2018) (memorandum) ("Similarly, to the extent that Appellant argues the trial court erred in admitting the testimony of the Commonwealth's expert witness, Dr. Scribano, as improperly bolstering the victim's credibility, that claim is also waived."). Of significance, however, is the fact that the Superior Court additionally concluded the following:

> **If Appellant had properly preserved his claims for appeal**, upon review of the record, the briefs of the parties, and the applicable legal authority, **we would conclude that the trial court's opinion filed on August 14, 2017, comprehensively disposed of them.** Accordingly, we would affirm the judgment of sentence based upon the opinion of the Honorable Garrett D. Page.

*Id.* at 4, n.3 (emphasis added).

Thus, although the Pennsylvania Superior Court did not rule on ineffective assistance of counsel in its ruling on Defendant's previous appeal, it did touch on the issue of whether Defendant was entitled to a new trial due to the admission of Dr. Scribano's testimony allegedly bolstering the victim's credibility—ultimately finding the claim "comprehensively disposed of" on its merits. *Id.*

Initially, Defendant contended in his PCRA petition that trial counsel should have objected to Dr. Scribano's testimony because Pennsylvania law provides that "[a]n expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical evidence of abuse." *Commonwealth v. Maconeghy*, 642 Pa. 770, 779, 171 A.3d 707, 712 (2017). In the Notice of Intent to Dismiss on September 6, 2019, this Court noted that *Commonwealth v. Maconeghy* was not decided until 2017—two years after Defendant's trial took place—and thus defense counsel could not have possibly objected to Dr. Scribano's testimony on the grounds of this particular case's holding. *See Com. v. Cox*, 603 Pa. 223, 283, 983 A.2d 666, 702 (2009)

6

("The law is clear that counsel cannot be held ineffective for failing to anticipate a change in the law."). In Issue 1 of his Concise Statement, Defendant takes the position that even though *Commonwealth v. Maconeghy* had not been decided at that time, defense counsel should have objected based on existing law that later informed *Maconeghy*.

In his PCRA petition and Response in Opposition to the Court's Rule 907 Notice of Intent to Dismiss, Defendant cites many cases predating *Maconeghy*, most of which stand for the proposition that it is an error to admit expert testimony that bolsters the credibility of a victim without a basis in fact, as this invades the jury's sole province as trier of fact. *See Commonwealth v. Seese*, 517 A.2d 920, 922 (Pa. 1986) ("It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility…it was error to admit expert testimony as to the credibility of children who are of an age similar to that of the prosecution's chief witness, the crime victim.") (citations omitted); *Commonwealth v. Smith*, 567 A.2d 1080 (Pa. Super. 1989); *Kozack v. Struth*, 531 A.2d 420 (Pa. 1987); *Com. v. O'Searo*, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976) ("Traditionally, we have recognized not only the jury's ability to determine the credibility of the witnesses but also we have placed this determination within their sole province.").

The cases cited by Defendant are inapposite, as they center on instances where experts invaded the jury's "sole province" by improperly assessing the witness's credibility. Here, Dr. Scribano cannot be said to have assessed the victim's credibility at any point in his testimony. Instead, he merely provided important context for how he came to his sexual abuse diagnosis by analyzing information from different sources, not just the victim's statements. Any testimony provided by Dr. Scribano merely provided a backdrop for the jury to consider when later making their own assessment of the victim's credibility. Jurors were also instructed that they are the sole

7

judges of credibility.[2] This cautionary instruction, if followed by the jury, would extinguish any prejudice that Dr. Scribano's statements could have allegedly created. It is clear that the jury followed their instruction that they are the sole judges of credibility and did not rely on Dr. Scribano's testimony because during deliberations, the jury requested to have a copy of the transcript of the Mission Kids Interview. N.T. Trial 7/29/15, p. 133. Obviously, the jurors were weighing the in-court testimony against the interview at Mission Kids and evaluating credibility. The jurors also had the ability to see the victim testify at trial, and form their opinions on credibility based on the in-court testimony of the victim and the recorded prior statement.

Although Defendant tries to frame Dr. Scribano's testimony as having impermissibly opined as to the "credibility of children who are of an age similar to that of the prosecution's chief witness, the crime victim," Dr. Scribano specifically stated that he would need "corroborating information" from multiple sources before making a diagnosis based on a child's word alone, specifically testifying as follows:

> Q. Could you diagnose a child as a victim of sexual abuse if all you had was the disclosure, that the child says she was sexually abused? [...]
> A. **I would say you would need corroborating information to finalize that.**
> Q. That wouldn't be sufficient, huh?
> A. A sole description in and of itself without detail or contextural [sic] – what we refer to as contextural [sic] detail, **that would require additional information.**

N.T. Jury Trial 7/29/15, p. 27-28.

---

[2] "Now, as sole judges of the credibility of facts, you, the jurors, are responsible to give the testimony of every witness and all the other evidence what credibility and weight you think it deserves." N.T. Jury Trial 7/29/15, p. 91. "In summary on the question of credibility, it may be said that the jurors will apply their experience as men and women of the world and on the basis of criteria that I mentioned in others. Again, you bring in a whole collective basis of life experiences to determine these factors that you are to apply your common sense as a juror. And in doing so, you will determine wherein lies the truth, the degrees of truth, and the value and weight that is to be ascribed to the testimony of each witness who has testified throughout this proceeding." *Id.* at p. 93.

8

Dr. Scribano further pushed back against defense counsel's repeated questioning as to whether he would find credible the complaints of other children, presumably of an age similar to the victim, when he provided the following testimony:

> Q. [I]f a child comes in and says I was sexually abused and **that's all you have to go on**, you will still diagnose them as a victim of sexual abuse?
> A. **That's not all we go on.** I explained she was exhibiting sexual behaviors. That is a red flag that should start the ball. Then in the context of her discussing with her father, she makes a disclosure. Then an investigation ensures, and she provides further elaboration of that disclosure very consistent with the prior information, and that hasn't really changed. And the second piece of that response or my response, if I can, is that the incentive for a child at this age to say anything other than what happened would be developmentally incongruous. In other words, there really is no incentive for a child this age to find themselves fabricating information. It would be very, very unlikely for something like that to occur.

*Id.* at p. 26.

Further, the Pennsylvania Superior Court has held that a witness's opinion of the victim's veracity must be viewed in context, and the Court has previously held an expert's testimony regarding the victim's veracity to not be prejudicial. *See Commonwealth v. Aaron*, 419 Pa. Super. 470, 479-80 (1992). Thus, to the extent that Defendant takes issue with Dr. Scribano's statement that "there really is no incentive for a child this age to find themselves fabricating information," this statement should be viewed in context of Dr. Scribano's repeated testimony that he would not rely on a child's word alone when making a sexual abuse diagnosis. Looking to the full context of Dr. Scribano's testimony, he did not opine that any testimony from children of the victim's age bracket should be seen as credible.[3] Finally, Dr. Scribano's testimony was

---

[3] This Court notes that Dr. Scribano's passing mention that children of the victim's age do not often have incentive to lie is distinguishable from the improper expert opinion "as to the veracity of the class of potential witnesses of which the victim was a member" in *Com v. Seese* (the case cited by Defendant), as the expert in *Seese* provided extensive testimony in response to the question "Based upon your experience and your pediatric specialization, **does**

proper because the Pennsylvania Superior Court has held that medical expert testimony as to the absence of diagnostic injuries or scars not excluding the possibility of abuse "does not encroach upon the jury's role in evaluating witness credibility." *Com. v. Johnson*, 456 Pa. Super. 251, 256, 690 A.2d 274, 277 (1997).

Even if Defendant could establish that this claim had merit—which this Court does not believe he has—Defendant cannot prove that failure of his trial counsel to object to the testimony of Dr. Scribano prejudiced him. Defendant's case was one in which the Commonwealth presented overwhelming evidence of his guilt, such that any prejudice that might have resulted would have been so slight as to have not changed the outcome of the trial. *See Com. v. Saranchak*, 581 Pa. 490, 506, 866 A.2d 292, 301 (2005) (holding that a claim of trial counsel's ineffectiveness fails to establish prejudice where there is "overwhelming evidence" of guilt).

Here, the victim, her parents, the Mission Kids interviewer, and Dr. Scribano gave testimony consistent with each other and consistent with the allegations of rape and related charges. The victim credibly testified specifically to several incidents where the Defendant raped her, and her parents' testimony corroborated her own. Ms. Crocetto, the Mission Kids interviewer, testified regarding the interview she did with the victim, and the edited video of that interview was shown to the jury. The Defense presented no live witness evidence, and only asked that the transcript of the Mission Kids Interview be admitted. When viewed together, the evidence, the testimony of multiple witnesses, the consistency of the statements made by the victim, the detailed trial testimony of the victim, her description of Defendant's penis, and the

---

the medical literature say anything about children of the age of eight in giving complaints of sexual abuse or rape as far as their veracity?" *Com. v. Seese*, 512 Pa. 439, 441, 517 A.2d 920, 921 (1986) (emphasis added). Here, Dr. Scribano was merely explaining his diagnosis process and the many factors he takes into account besides statements by the victim.

10

sexual abuse diagnosis of the doctor, combine to create uncontradicted overwhelming evidence of Defendant's guilt.

## II. Counsel's Advice to Not Testify

Next, Defendant contends that this Court erred in dismissing his claim that trial counsel was ineffective for advising him not to testify. "The decision whether to testify is ultimately to be made by the accused after consultation with counsel." *Com. v. Daniels*, 2010 PA Super 112, ¶ 16, 999 A.2d 590, 596 (2010) (quoting *Commonwealth v. Whitney*, 550 Pa. 618, 630, 708 A.2d 471, 476 (1998)). To establish an ineffective assistance of counsel claim based on failure to advise a defendant of his right to testify, a defendant must establish "either that counsel interfered with his right to testify, or that counsel gave specific advice **so unreasonable** as to vitiate a knowing and intelligent decision to testify on his own behalf." *Com. v. Nieves*, 560 Pa. 529, 533, 746 A.2d 1102, 1104 (2000) (emphasis added). "[O]ne is bound by one's statements made during a plea colloquy, and may not successfully assert claims that contradict such statements." *Com. v. Muhammad*, 2002 PA Super 55, ¶ 21, 794 A.2d 378, 384 (2002) (citing *Commonwealth v. Barnes*, 455 Pa.Super. 267, 687 A.2d 1163, 1167 (1996)).

Here, Defendant contends that defense counsel both failed to inform him of his right to testify and improperly advised him not to testify, preventing him from offering exculpatory and impeachment evidence. Def.'s PCRA Pet., p. 7-8. The exculpatory evidence that Defendant alleges would have helped his case is testimony on the cramped conditions of the apartment where the alleged events took place. Defendant suggests that such testimony would have shown it would be "unlikely" or "impossible" for the Defendant to have carried out abuse in such cramped conditions with no one in the apartment discovering. *Id.* at 8. Regarding the impeachment evidence, Defendant claims he would have testified that the victim's mother

11

threatened his wife that she would "teach her what it's like to live without a husband," giving rise to a motive to lie and fabricate charges against him. *Id.* at 9.

Although Defendant claims in his PCRA petition that his trial counsel did not explain that he had a right to testify, the record states otherwise. During trial, Defendant was repeatedly asked whether his decision not to testify was his own and informed of his constitutional right to testify. Defendant answered affirmatively that he knew of his right, that he and his counsel had discussed the decision, and that he waived it freely. N.T. Jury Trial 7/29/15, p. 38-40. Specifically, Defendant stated the following in an on-the-record colloquy between himself and his trial counsel:

> Q. You understand the prosecution has now rested its case against you. And now it's up to you, if you want, to present a defense and specifically **your questioning now involves whether or not you want to testify on your own behalf. Do you understand that?**
> A. **Yes I do.**
> Q. **You obviously have a constitutional right to testify, to present evidence by way of you own testimony.** You understand that if you choose not to testify, it can't be held against you. In fact, the Court will instruct the jury that they are to take no adverse inference, in other words, they can't hold that against you; they can't think bad of you or use that as evidence of you guilt if you choose to not testify. Do you understand that?
> A. Yes.
> Q. Have you and I discussed your strategy and decision as to whether or not you would like to testify?
> A. Not really.
> Q. **Have you and I talked about whether or not you want to testify?**
> A. **Yes.**
> Q. Okay. And I think **I had given you advice and you had indicated to me and I have indicated to the Court your decision is to not testify**; is that correct?
> A. Not testify, yes.
> Q. Is that accurate?
> A. Yes, that is correct.
> Q. Has anybody forced or threatened or coerced you to give up your right to testify?
> A. No.

12

Q. Are you doing so of your own free will?
A. Yes.

*See id.* (emphasis added).

In light of this exchange, Defendant has definitively failed to prove "either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf" as required to show ineffective assistance of counsel on this claim. *Com. v. Nieves*, 560 Pa. 529, 533, 746 A.2d 1102, 1104 (2000).

Furthermore, the decision to advise Defendant not to testify can only be seen as the result of reasonable strategy. Cramped conditions in no way mean that it would have been "unlikely" or "impossible" for Defendant to have carried out sexual abuse undetected. The victim testified that Defendant would abuse her in his bedroom with the door closed, while his wife was absent and his sons watching television in another room, or when her own mother was sleeping in another room. N.T. Jury Trial 7/28/15, p. 74-80, 85, 100-101. Defendant similarly fails to establish merit or prejudice stemming from his not testifying regarding threats the victim's mother made to his wife during a fight. Defense counsel did in fact impeach the victim's mother for a motive to lie related to this fight, as will be discussed in greater detail in Section III *infra*. Thus, this Court fails to see how Defendant has proved merit or prejudice stemming from being advised not to testify on his own behalf. *See Com. v. Spotz*, 587 Pa. 1, 52, 896 A.2d 1191, 1221 (2006) ("Counsel will not be deemed ineffective for failing to present testimony, the absence of which did not prejudice [the defendant].").

In his PCRA petition, Defendant claims the standard for assessing prejudice in a case involving the right to testify requires only that "the result of the *waiver proceeding* would have been different absent counsel's ineffectiveness"—rather than the traditional prejudice standard,

13

i.e. that there is a reasonable probability that the outcome of the proceedings would have been different. *See Com. v. Mallory*, 596 Pa. 172, 199, 941 A.2d 686, 702 (2008) (emphasis added); *Commonwealth v. Duffey*, 855 A.2d 764, 768–69 (Pa. 2004). The Pennsylvania Supreme Court, however, has declined to adopt this prejudice standard where it finds "pervasive weakness in Appellant's argument throughout" and where its use would "preclude us from giving any effect to…the PCRA court's abundantly reasonable conclusion that jurors would have been (and would be) skeptical of Appellant's self-serving testimony." *See Commonwealth v. Towles*, 208 A.3d 988, 1003 (Pa. 2019). In such a case, the Pennsylvania Supreme Court instead chose to consider the traditional standard for prejudice in an ineffective assistance of counsel claim, i.e., that there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* ("We do so, in part, because the Commonwealth has not presented any advocacy for or against the [particularized standard.]"). Here, even if this Court applied the more particularized standard for finding prejudice in cases involving a Defendant's waiver of his right to testify, Defendant has failed to establish that his trial counsel's advice would have altered either the waiver proceeding or the outcome of the trial itself, thus this claim must fail.

### III. Counsel's Failure to Cross-Examine Witness on Her Motive to Lie

Defendant alleges this Court erred in dismissing his claim that trial counsel was ineffective for failing to cross-examine E.S., the victim's mother, on her motive to lie. The examination and cross-examination of witnesses is a matter in the first instance clearly within the province of trial counsel. *Commonwealth v. Fulton*, 318 Pa.Super. 470, 480, 465 A.2d 650, 655 (1983). "Where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, it is particularly important that the defendant be accorded an adequate opportunity to demonstrate through cross-examination that the witness is biased." *Com.*

14

*v. Davis*, 438 Pa. Super. 425, 430–31, 652 A.2d 885, 888 (1995) (citing *Commonwealth v. Birch*, 532 Pa. 563, 566, 616 A.2d 977, 978 (1992)). Counsel cannot be held ineffective because he chose one reasonable course and not all possible lines of questioning. *Commonwealth v. Ly*, 528 Pa. 523, 533–34, 599 A.2d 613, 618 (1991).

Defendant's PCRA petition argued that trial counsel should have cross-examined E.S. on her threat to Defendant's wife during a fight, in which she said she would "teach her [Defendant's wife] what it's like to without a husband." Def.'s PCRA Pet., p. 9-10. Defendant alleges that this threat was evidence of E.S.'s motive to lie and fabricate charges against Defendant. *Id.* This Court fails to see how trial counsel not questioning E.S. on the specifics of her alleged threats to Defendant's wife prejudiced the Defendant, even if Defendant's allegations of E.S.'s threats are true. Defendant's trial counsel thoroughly impeached E.S. with regard to her motive to lie, cross-examining her about the fight she had with Defendant's wife and ultimately eliciting testimony that their fight made her mad enough to cease contact with both Defendant and his wife, despite the fact that they had been friends for years. N.T. Jury Trial 7/28/15, p. 142-43. Specifically, trial counsel impeached E.S. on her lingering anger toward Defendant's wife as follows:

> Q. And this is what the argument was with yourself and Anita, his wife; right? She's complaining because she's calling to see where you are at; right? And Anita is complaining that you are out of the hospital, and you are leaving your young daughter with them to take care of her.
> A. The day after she did that, I didn't call her on her phone anymore. I called Sam's phone and talked to [J.A.]. So that same day I told Sam what the wife did.
> Q. That's the **falling out**, in other words, that's what caused you and the Arthurs to not really communicate anymore?
> A. Uh-huh.
> Q. **You are mad that Anita said those things about you.**
> A. **Uh-huh.**

15

Q. That you got out of the hospital and you still left [J.A.] in their care; right?
A. Uh-huh.
Q. **And that you are angry about that; right?**
A. **Yes.**
Q. **So much so that a lifetime friend that you had you never talked to even to this day, right?**
A. It doesn't matter because they don't need me, so what is the point for me to also.

*Id.* (emphasis added).

That defense counsel did not cross-examine E.S. about specific words and phrases used during the fight with Defendant's wife fails to prove prejudice against Defendant, as "[t]rial counsel cannot be found ineffective for failing to do something that he, in fact, did." *Com. v. Chmiel*, 585 Pa. 547, 615, 889 A.2d 501, 541 (2005). Defense counsel highlighted E.S.'s anger at Defendant's wife and the permanent rift that resulted, sufficiently putting the jurors on notice of a potential source of bias of this witness. That the jurors found E.S. credible despite this risk of bias was within their rights as the sole judges of credibility during the trial. Defendant cannot prove that the outcome of the case would have been different if his trial counsel had undertaken a slightly different line of questioning when impeaching E.S., nor can he show that defense counsel lacked a reasonable basis for failing to impeach E.S. in this manner when he already impeached her at length.

## IV. Defendant's Failure to Provide Witness Certifications

Finally, Defendant asserts in each of his three Concise Statement issues that this Court should have granted him an evidentiary hearing. "Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony." 42 Pa.C.S.A. § 9545 (d) (1) (i). "If a petitioner

16

is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth and substance of testimony." 42 Pa. C.S.A. § 9545 (d) (1) (ii). "Failure to substantially comply with the requirements of this paragraph **shall render the proposed witness's testimony inadmissible.**" 42 Pa.C.S.A. § 9545 (d) (1) (iii) (emphasis added). The Pennsylvania Superior Court has held that failure to provide witness certifications provides a sufficient basis upon which to deny a hearing. *See Com. v. Brown*, 767 A.2d 576, 583 (Pa. Super. Ct. 2001) ("Since Appellant failed to provide any certification with respect to potential witnesses, the Trial Court clearly did not abuse its discretion by failing to conduct an evidentiary hearing."); *see also Com. v. Faulk*, 2011 PA Super 76, 21 A.3d 1196, 1203 (2011) ("As Appellant submitted only a witness list and failed to comply with the PCRA court's repeated directions to file witness certifications, we cannot find the PCRA court abused its discretion in refusing to allow Appellant to present the testimony of his potential witnesses.").

Here, Defendant failed to meet the minimum requirements to have been granted an evidentiary hearing. Because Defendant provided none of the requisite certifications or documents, all witness testimony would have been inadmissible even if this Court had granted an evidentiary hearing. As such, Defendant was not entitled to an evidentiary hearing, and this Court did not err in declining his request for one.

## CONCLUSION

For all of the aforementioned reasons, this Court's decision and order should be **AFFIRMED**.

17

BY THE COURT:

_____
GARRETT D. PAGE,          J.

Copies of the above Opinion
Mailed on _11· 19· 19_
By Interoffice Mail to:
Robert Falin, Esquire, DDA
Adrienne Jappe, Esquire, ADA
Court Administration - Criminal
By First Class Mail to:
Todd M. Mosser, Esquire
Samuel Arthur, Defendant

Judicial Secretary

18